**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DESMOND QUICK,

                Plaintiff,

      v.                                                        No. 14-CV-1503
                                                                  (TJM/CFH)

JOHN OMITTEE, et al.,

                Defendants.

---

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                                  **OF COUNSEL:**

Desmond Quick
03-B-1945
Plaintiff Pro Se
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

HON. ERIC T. SCHNEIDERMAN            CATHY Y. SHEEHAN, ESQ.
Attorney General for the                         Assistant Attorney General
   State of New York
The Capitol
Albany, New York 12224
Attorney for Defendants

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff pro se Desmond Quick, an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that multiple

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

defendants violated his constitutional rights under the First and Eighth Amendments. Dkt. No. 1 ("Compl."). On November 12, 2015, Quick filed an amended complaint alleging that defendants Carlton Cioch, Andrew Lawrence, Jan Okusko, John Dougherty, John Bankert, John Gavin, Ryan Rugari, and Christopher Zike violated his constitutional rights under the Eighth Amendment. Dkt. No. 38 ("Am. Compl."). Presently pending is defendants' motion to dismiss the amended complaint under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) based on Quick's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA").[2] Dkt. No. 50. For the following reasons, it is recommended that defendants' motion to dismiss be granted.

## I. Background

The facts are reviewed in the light most favorable to Quick as the non-moving party. See subsection II(A) infra. At all relevant times, Quick was an inmate incarcerated at Marcy Correctional Facility ("Marcy").

On November 19, 2014, Quick alleges that defendant Okusko "smack[ed]" him during a strip search because Quick "came off the wall." Am. Compl. ¶ 1. Okusko then began to "throw[] punches" at Quick. Id. ¶ 2. Defendants Lawrence and Bankert then struck Quick, three times each. Id. ¶ 3. Defendants Oskusko, Lawrence, Bankert, and Gavin then wrestled Quick to the ground and restrained him. Id. ¶ 4. Oskusko then punched Quick, causing his nose and mouth to bleed, applied pressure to his chest, and choked him until he was rendered unconscious. Id. ¶ 5. Quick was then kicked on his

---

[2] Defendants' motion to dismiss was originally brought by defendants Bankert, Gavin, Rugari, and Zike. See Dkt. No. 50-1 at 3. Defendants Cioch, Lawrence, and Okusko joined the instant motion on March 1, 2016. Dkt. No. 55. Defendant Dougherty joined the instant motion on April 22, 2016. Dkt. No. 65.

legs and genitals by Rugari and an unidentified correction officer, and an unidentified correction officer placed a "spit mask" on his face. Id. ¶¶ 6-7. A waist chain and shackles were then placed on Quick and he was taken to receive medical treatment. Id. ¶ 9.

While awaiting medical treatment, Quick's arms were cuffed above his head, causing pain. Am. Compl. ¶ 10. Quick requested that defendants Cioch and Rugari uncuff him, but they refused. Id. Quick was then denied medical treatment by Omittee and Dougherty, who refused to examine plaintiff's injuries, or remove the spit mask. Id. at ¶ 11. Quick was further examined by the Office of Mental Health staff, and was escorted to the RCTP, where his clothes were "cut off." Id. ¶ 12. He received no pain medication. Id. ¶ 11.

As a result of the assault and lack of medical care following the assault, Quick suffered "excruciating pain" on his face, neck, chest, and back. Am. Compl. ¶ 13. In the days following the assault, he was given some pain medication. Id. Quick also requested to see a doctor multiple times through emergency sick calls. Id. Non-party OMH therapist Ms. Jones examined plaintiff at his cell on November 25, 2014. Id. Quick alleges that Jones observed the blood and bruises on his face. Id. Quick informed Jones that he had been denied medical treatment. Id.

Quick was examined by non-party Dr. Valmudi Zaki on December 3, 2014. Am. Compl. ¶ 14. He informed Dr. Zaki that he was not examined following the November 19, 2014 assault. Id. Quick told Dr. Zaki that he was experiencing pain in his face, head, neck, chest, and back, and requested an examination and pain medication. Id. Dr. Zaki then told the correction officer to remove Quick from the room. Id.

Quick filed two grievances regarding the incidents in his complaint. Am. Compl. at

3

4. The grievances are pending Central Office Review Committee ("CORC") review. Id.

## II. Discussion[3]

Quick states that the grievances he filed regarding the constitutional violations alleged in his amended complaint are pending final review by CORC. Am. Compl. at 4. Defendants argue that Quick failed to exhaust administrative remedies prior to commencing this action, and therefore his amended complaint must be dismissed. Dkt. No. 50-1 at 3.

### A. Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, this "tenet…is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action…[as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial

---

[3] All unpublished opinions cited to by the Court in this Report-Recommendation and Order are, unless otherwise noted, attached to this Report-Recommendation and Order.

plausibility…that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement…it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible….") (citations and internal quotation marks omitted). Determining whether plausibility exists is a "context-specific [task] that requir[es] the reviewing court to draw on its [judicial] experience and common sense." Iqbal, 556 U.S. at 663-64 (citation omitted).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008).

## B. Exhaustion

5

The PLRA requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). The exhaustion requirement applies "'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" Mauldin v. Kiff, No. 11-CV-107-A, 2014 WL 2708434, at *4 (W.D.N.Y. June 16, 2014) (quoting Porter, 534 U.S. at 532). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. Porter, 534 U.S. at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). Thus, a court must conduct an inquiry to determine whether an inmate's failure to follow the applicable grievance procedures is fatal to his or her claims. A court must consider whether: "(1) administrative remedies are not available to the prisoner; [or] (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense[.]"[4] Ruggiero, 467 F.3d at 175 (citation omitted).

---

[4] The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, 136 S. Ct. 1850, 1862 (2016). As such, the special circumstances exception previously promulgated by the Second Circuit in Giano v. Goord, 380 F.3d 670 (2d Cir. 2004), and Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004), is not consistent with the statutory requirements of the PLRA. Williams v. Correction Officer Priatno, No. 14-4777, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016).

6

Administrative remedies are unavailable when there are no procedural means that afford the possibility of relief for the action complained of. Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004). Further, courts have found administrative remedies to be unavailable "'where [a] plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative remedies.'" McCray v. Smith, No. 9:07-CV-415, 2009 WL 2762166, at *4 (N.D.N.Y Aug. 25, 2009) (quoting Hargrove v. Riley, No. CV-04-4587 (DST), 2007 WL 389003, at *8 (E.D.N.Y. Jan. 31, 2007)). Where an inmate made a reasonable attempt to file a grievance but prison officials prevented the filing, the grievance procedures are not available to the defendant and the PLRA does not prevent the prisoner from suing in federal court. Thomas v. N.Y.S. Dep't of Corr. Servs., No. 00-CV-7163(NRB), 2002 WL 31164546, at *3 (S.D.N.Y. Sept. 30, 2002) (citations omitted).

Here, there is no dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5 (2015). First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged action. Id. at § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. at § 701.5(b)(1). If no informal resolution occurs, the full IGP committee must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable to the inmate, the inmate

may appeal to the Central Office Review Committee ("CORC") within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii).

Quick filed the original complaint in this action on December 12, 2014. See Compl. On December 16, 2014, Quick filed a grievance regarding the events that took place on November 19, 2014. Dkt. No. 50-1 at 3-4. In his original complaint, Quick claims that he did not file a grievance prior to filing a complaint in federal court because Tambarino[5] threatened to assault him and transfer him to another prison if he continued to file grievances. Compl. at 5. Quick also claimed that he feared physical retaliation from other correction officers if he were to file a grievance. Id. He further stated that he was waiting to file a grievance until he received a docket number from the Court. Id. In Quick's amended complaint, filed on November 12, 2015, Quick makes no mention of his fearing physical retaliation as an excuse for his failure to exhaust. See Am. Compl. at 4. Instead, Quick states that he filed grievances regarding the allegations in the complaint, and that the grievances are pending final CORC review. See id.

To satisfy the requirements for exhaustion under the PLRA, CORC must issue a written decision within thirty days of receipt of the grievant's appeal for completion of the three-step inmate grievance program. N.Y. COMP. CODES. R & REGS. tit 7, § 701.5 (d)(2)(ii).

---

[5] Tambarino was named as a defendant in Quick's original complaint, but was not named as a defendant in Quick's amended complaint.

Thus, Quick concedes that he failed to complete the third step of the inmate grievance program, and failed to exhaust his administrative remedies. See Am. Compl. at 4. As discussed, the exhaustion of administrative remedies must be fully completed prior to the filing of an action in federal court. Neal v. Goord, 267 F.3d 116, 123 (2d Cir. 2001), overruled on other grounds, Porter, 534 U.S. at 532. Thus, "where it appears that plaintiff has begun, but not completed, the grievance procedure, the appropriate course would be to dismiss the action without prejudice to allow plaintiff to meet the exhaustion requirement." Leal v. Johnson, 315 F. Supp. 2d 345, 347 (W.D.N.Y. 2004).

Quick, in his response to defendants' motion, urges the Court to excuse his failure to exhaust because he feared retaliation, and also because he was already engaged in completing the grievance process after he filed his federal complaint. Dkt. No. 58. Quick's arguments are contradictory and meritless. As an initial matter, Quick cannot argue both that he feared retaliation as the reason that he should be excused from the PLRA's requirements, and that he should be excused because he is actively participating in the grievance process while his federal complaint is pending. As to the latter argument, dismissal is required even in cases where the exhaustion requirement is met subsequent to the filing of the complaint. Rossi v. Fishcer, 13-CV-3167 (PKC)(DF), 2015 WL 769551, at *4 (S.D.N.Y. Feb. 24, 2015). As to Quick's fear of retaliation, the Court finds that Quick's alleged fear is belied by the fact that he filed a grievance four days after filing his federal complaint, and less than a month after the incidents outlined in his original complaint occurred. See Dkt. No. 50-1 at 6; Dorsey v. Ingerson, No. 9:10-CV-1030 (DNH/CFH), 2014 WL 5769109, at *5 (N.D.N.Y. Nov. 5, 2014) (finding that the plaintiff's alleged fear of retaliation was insufficient to render administrative remedies unavailable to

him because the plaintiff filed several grievances during the time period in question); Harrison v. Goord, No. 07 Civ. 1806(HB), 2009 WL 1605770, at *6 (S.D.N.Y. June 9, 2009) (finding the plaintiff's claim that he feared retaliation insufficient to render administrative remedies unavailable to him where he filed multiple grievances during the same time period that he was allegedly threatened).  Additionally, insofar as Quick's original complaint suggests that he feared physical retaliation if he were to file a grievance, such a claim is countered by the fact that his amended complaint fails to mention any fear of retaliation.  Compl. at 5; Am. Compl. at 4.

Accordingly, it is recommended that defendants' motion to dismiss on this ground be granted, but that such dismissal be without prejudice.

### III.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion for dismissal (Dkt. No. 50) of plaintiff's amended complaint (Dkt. No. 38) be **GRANTED**; and it is further

**RECOMMENDED** that all claims in plaintiff's amended complaint be dismissed without prejudice, for plaintiff Desmond Quick's failure to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action, pursuant to local rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO**

OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Dated: August 11, 2016
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge